IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FIREBIRDS INTERNATIONAL, LLC,    §
                                 §
        Plaintiffs,              §
                                 §
V.                               §        No. 3:17-cv-2719-B
                                 §
FIREBIRD RESTAURANT GROUP,       §        **FILED UNDER SEAL**
LLC, ET AL.,                     §
                                 §
        Defendants.              §

**MEMORANDUM OPINION AND ORDER**

Plaintiff Firebirds International, LLC ("Firebirds" or "Plaintiff") has filed a First

Motion to Compel, *see* Dkt. No. 27 (the "MTC"), requesting that the Court enter an

order compelling Defendants Firebird Restaurant Group, LLC ("FRG") and Firebird

IP, LLC ("FIP") (collectively with FRG, "Defendants") to (1) respond to Firebirds'

Interrogatory Nos. 3 through 8 and Request for Production Nos. 6, 7, 8, and 11 to

include the goods and/or services offered by FRG's restaurants; (2) respond to

Firebirds' Interrogatory No. 10 and Request for Production No. 12 to include all of

FRG's financial information, including the consolidated financials with its subsidiaries;

and (3) produce all correspondence responsive to each of Firebirds' requests.

United States District Judge Jane J. Boyle referred the MTC to the undersigned

United States magistrate judge for a hearing, if necessary, and for recommendation or

determination under 28 U.S.C. § 636(b). *See* Dkt. No. 29.

Defendants filed a response, *see* Dkt. No. 35, and Firebirds filed a sealed reply, *see* Dkt. No. 41.

The Court also, on an unopposed motion, permitted Defendants to file a Sur-Reply Brief in Support of Their Opposition to Plaintiff Firebirds International, LLC's Motion to Compel [Dkt. No. 46]. *See* Dkt. No. 45.

For the reasons and to the extent explained below, the Court GRANTS in part and DENIES in part Plaintiff Firebirds International, LLC's First Motion to Compel [Dkt. No. 27].

## Background

The pertinent factual background and procedural background is familiar to the parties and will not be recounted here except as necessary in the Court's analysis and conclusions below.

Firebirds explains that,

> [w]ithin weeks of this Court entering the Scheduling Order in this matter on November 28, 2017 [DE 19], Plaintiff Firebirds served discovery requests on Defendants Firebird Restaurant Group, LLC ("FRG") and Firebird IP, LLC ("FIP") (collectively with FRG, "Defendants"). Firebirds requested basic information relevant to every Lanham Act claim, including (1) information regarding the goods and/or services offered by Defendants, and (2) FRG's financial information, namely its revenue, costs, and profits. However, for months Defendants have delayed, stalled, and now refused to produce this basic information that is highly relevant to Firebirds' claims.
>
> The central question in a Lanham Act claim such as this is whether Defendants' use of "Firebird" or "Firebird Restaurant Group" (with or without design) mark (collectively, the "Infringing Mark") is likely to cause confusion as to the "source, affiliation, or sponsorship" of Defendants' goods and/or services. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 473 (5th Cir. 2008). Case law is well settled that the court should examine eight

nonexclusive "digits of confusion" to determine whether a likelihood of confusion is present:

> (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers.

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (citations omitted).

Defendants refuse to provide discovery on its goods and/or services, its purchasers, its outlets/channels of trade, or its advertising. Defendants object to producing this information claiming that the information is not relevant, based on their misuse of their corporate structure. Defendants admit that Defendant FRG is a "restaurant holding company" that owns upwards of 50 restaurants and a food service company that supplies prepared foods to restaurants. FRG's sole business purpose is restaurant services. FRG identifies itself using the Infringing Mark, which is purportedly owned and licensed by its subsidiary IP holding company, FIP. However, despite treating itself as a single operating business entity, FRG objects to providing information regarding its goods and services because the goods and services are provided through its subsidiaries. In other words, FRG attempts to use its corporate structure to artificially separate its use of the Infringing Mark, on the one hand, from its goods and services, on the other hand. This is not a valid basis for avoiding liability for trademark infringement and unfair competition, but more importantly, it is not a valid basis to refuse discovery.

Additionally, Defendants refuse to produce revenue derived from its restaurant services. The Lanham Act expressly provides that a plaintiff must prove the defendant's sales to recover for improper use of the plaintiff's trademark. See 15 U.S.C. § 1117. Firebirds is entitled to discovery of information related to FRG's financial information – including that of FRG's subsidiaries and affiliated entities.

This is the most relevant information to Firebirds' claims and information that is solely within Defendants' custody and control. Therefore Firebirds seeks an order from the Court to compel Defendants to produce this highly relevant information, as detailed below.

Dkt. No. 27 at 1-3.

Defendants respond that

[t]his is a trademark case about two businesses operating in different geographic areas with different names. Plaintiff claims that consumers

will be confused when buying food at Defendants' restaurants, with names such as Meso Maya, El Fenix, Snuffer's, and Village Burger Bar [(the "Restaurant Subsidiaries")], into somehow thinking that they were dealing with Plaintiff's "Firebirds Wood Fired Grill" restaurants because the name of the holding company that owns Defendants' restaurants is Firebird Restaurant Group. But Defendants' "Firebird Restaurant Group" is merely a holding company that does not offer for sale any goods or render any commercial restaurant services under the name "Firebird" name. Indeed, consumers buying food or drink in Defendants' restaurant properties could not make a mistaken purchasing decision even if they tried because the holding companies' name "Firebird Restaurant Group" is not used anywhere in the restaurant where goods and services are purchased. That is to say, nowhere at the Restaurant Subsidiaries can a consumer even see the allegedly infringing "Firebird Restaurant Group" moniker. Plaintiff asks this Court to force Defendants to disclose all the sales and profit information for every single one of the Restaurant Subsidiaries, even though the accused mark is found nowhere at those restaurants.

Plaintiff seeks to disregard this corporate form and compel what does not exist. Plaintiff Firebirds International, LLC ("Firebirds"), requests that the Court compel Defendants FRG and Firebird IP Holdings ("FIP") to produce information regarding use of the "Firebird" term. Plaintiff also requests the Court compel Defendants to produce financial information resulting from such use. Defendants, however, have fully responded to Plaintiff's Requests. Defendants have explained the limited instances in which Defendants have used the "Firebird" term – not as a trademark, but as part of FRG and FIP's names, in business articles others have written about FRG, and as part of FRG's sponsorship of a local 5K whose proceeds benefit a charity group. Defendants have further explained that because FRG and FIP do not offer any good or service for sale under the "Firebird" term, no revenue or other information from such sales exist. The Restaurant Subsidiaries do not use the "Firebird" term, but instead operate under their own marks and brands.

Although Defendants maintain that FRG and FIP's use of the term "Firebird" does not infringe Plaintiff's "Firebird" trademark, the Court does not need to decide that issue in order to resolve this motion. Defendants do not – as Plaintiff accuses – base their alleged non-production on a legal conclusion that Defendants do not infringe. (See Motion, Dkt. No. 27 at 15.) Rather, Defendants have explained that no further documents or information responsive to Plaintiff's Requests exists. Plaintiff, unhappy that so little information exists, now moves to

compel documents and information that are outside the scope of
Plaintiff's requests. Defendants oppose.

Dkt. No. 35 at 4-5 (footnotes and emphasis omitted). Defendants further explain that

"one iteration of the Meso Maya menu did contain the words 'Managed by Firebird

Restaurant Group' in small print at the bottom for about a year, this is the only use of

the word 'FIREBIRD' at any of the restaurants" and that "Defendants certainly dispute

that this could constitute trademark infringement, but – in the hope of avoiding

unnecessary motion practice – nonetheless voluntarily produced revenue and profit

information for the Meso Maya subsidiary." *Id.* at 4 n.2.

In reply, Firebirds asserts that its MTC

is straightforward: Defendant FRG is clearly using (and intends to use
according to FIP's pending trademark application) "FIREBIRD" as a
trademark ("Infringing Mark"), and it is clearly using the Infringing
Mark in connection with its over 50 restaurants. Yet Defendants argue,
contrary to the evidence, that they are not in fact using the Infringing
Mark as a trademark and that Defendant FRG does not itself offer any
goods or services, but rather that the restaurant services are offered by
FRG's wholly owned individual restaurant subsidiaries ("Restaurant
Subsidiaries").

First, Defendants cannot refuse discovery on the basis that they
are not infringing and therefore no responsive documents exist. Secondly,
Defendants cannot be permitted to abuse their corporate structure to
artificially separate the corporate entity that is actually using the
Infringing Mark from the wholly-owned entities that are purportedly
providing the goods and services. If either of these arguments held water,
it would be a simple matter for trademark infringers to avoid liability.
More importantly, neither is a valid basis to refuse discovery.

Defendants continue to confuse the issues in this case. Defendants
incorrectly argue liability standards in opposition to Firebirds' Motion to
compel discovery; but Firebirds is not seeking in this Motion to hold the
Restaurant Subsidiaries liable for the acts of the parent, or vice versa –
this is not a summary judgment motion. Defendants also incorrectly
argue that Firebirds' discovery requests require that the Restaurant
Subsidiaries themselves use the Infringing Mark – this is a strawman

argument. Firebirds requests Defendants to identify "all goods and/or services that FRG, including through its subsidiaries and affiliates, offers for sale or intends to offer for sale…" [DE 28, App. 010-012] (emphasis added). In other words, because Defendants uses the Infringing Mark to advertise FRG to consumers as the source of the restaurants it owns, FRG is the source of those restaurant services. It is not necessary that the Restaurant Subsidiaries themselves use the mark, even though there is evidence of that fact and evidence that FRG is directly offering restaurant services. In fact, Firebirds learned just last week during Defendants' depositions pursuant to Rule 30(b)(6) that the hourly employees carrying out the restaurant services are in fact all employees of FRG and not the Restaurant Subsidiaries. [Exhibit 1 at 43:19-44:8; 44:24-45:2; 45:12-14; 46:15-19; App. 002-007]; [Exhibit 2 at 18:23-25; App. 011]. *See also* [DE 28, App. 048 ("Firebird Restaurant Group owns and operates a distinctive collection of popular restaurant concepts….") (emphasis added)].

It could not be clearer that Defendant FRG is using the Infringing Mark and doing so in connection with its offering of restaurant services. Firebirds is entitled to discovery on how Defendants are using the Infringing Mark as it relates to the likelihood of confusion analysis for trademark infringement, namely: the goods and services FRG provides, the date FRG first began using the Infringing Mark, the channels of trade in which FRG operates, FRG's purchasers, FRG's advertising. Firebirds is equally entitled to discovery of FRG's financial information under the Lanham Act. This is the most relevant information to a trademark infringement suit and solely within Defendants' custody and control. Therefore Firebirds seeks an order from the Court to compel Defendants to produce this highly relevant information, as detailed below.

Dkt. No. 41 at 1-3 (emphasis omitted).

## Legal Standards

"Unless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the

issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1); *accord Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015).

"Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case – which are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017).

"To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Id.* at 280.

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33. *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv); *accord Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) ("A party may move to compel production of materials that are within the scope of discovery and have been requested but not received. FED. R. CIV. P. 37(a). Yet, a court may decline to compel, and, at its option or on motion, 'may, for good cause, issue an order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden ..., including ... forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.' FED. R. CIV. P. 26(c)(1)(D); *see also* FED. R. CIV. P. 37(a)(5)(B).").

For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

Federal Rule of Civil Procedure 34(a)(1) provides that "[a] party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilation – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things." FED. R. CIV. P. 34(a). Further, Federal Rule of Civil Procedure 34(b) provides that a request for production or inspection "must describe with reasonable particularity each item or category of items to be inspected" or produced. FED. R. CIV. P. 34(b)(1)(A).

In response to a Rule 34(a) request, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B).

General or boilerplate objections are invalid, and "[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. Amended Federal Rule of Civil Procedure 34(b)(2) effectively codifies this requirement, at least in part: 'An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.'" *OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014); quoting FED. R. CIV. P. 34(b)(2)(C)), *objections overruled*, No. 3:13-cv-2110-KS, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).

As to interrogatories, Federal Rule of Civil Procedure 33(a)(2) provides that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." FED. R. CIV. P. 33(a)(2). "Generally, an interrogatory may relate to any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Pilver v. Hillsborough Cty.*, No. 8:15-CV-2327-T-23JSS, 2016 WL 4129282, at *3 (M.D. Fla. Aug. 3, 2016).

In response to interrogatories under Rule 33, "[t]he interrogatories must be answered: (A) by the party to whom they are directed; or (B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party." FED. R. CIV. P. 33(b)(1).

-9-

"Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath," and "[t]he grounds for objecting to an interrogatory must be stated with specificity." FED. R. CIV. P. 33(b)(3)-(4).

In sum, "[a] party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Heller*, 303 F.R.D. at 485.

As to the sufficiency of an interrogatory answer,

as the Fifth Circuit has observed, "[d]iscovery by interrogatory requires candor in responding.... The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616-17 (5th Cir. 1977). The fact that an interrogatory calls for a thorough response – one that will take time and effort to answer – does not make it improper. *See Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307-08 (5th Cir. 1973). Where an interrogatory answer "'as a whole disclose[s] a conscientious endeavor to understand the question[] and to answer fully [that question],'" a party's obligation under Rule 33 is satisfied. *Meltzer/Austin Rest. Corp. v. Benihana Nat'l. Corp.*, No. A-11-cv-542-LY, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2177 (3d ed. 2010)). [An answering party] is not required to make an extensive investigation in responding to an interrogatory, but he must pull together a verified answer by reviewing all sources of responsive information reasonably available to him and providing the responsive, relevant facts reasonably available to him. *See* 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2174 (3d ed. 2013).

*Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016).

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990); *accord Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 729 n.9 (5th Cir. 2018) ("While the Hospital did not file a motion to compel, this perhaps unadvised choice is not dispositive. 'Counsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests.' *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (rejecting a party's contention that sanctions could not be imposed when the opposing party had not first requested an order to compel and stating that the party resisting discovery requests 'must have a valid objection to each one in order to escape the production requirement').").

A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490.

And the Court has previously explained that "responding to interrogatories and document[] requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure"; "this manner of responding to a document request or interrogatory leaves the requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be"; "outside of the privilege and work product context..., responding to a document request or interrogatory 'subject to' and 'without waiving' objections is not consistent with the Federal Rules or warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; "a responding party has a duty to respond to or answer a discovery request to the extent that it is not objectionable" and "must describe what portions of the interrogatory or document request it is, and what portions it is not, answering or responding to based on its objections and why"; "if the request is truly objectionable – that is, the information or documents sought are not properly discoverable under the Federal Rules – the responding party should stand on an objection so far as it goes"; and, "as a general matter, if an objection does not preclude or prevent a response or answer, at least in part, the objection is improper and should not be made." *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 470 (N.D. Tex. 2015) (quoting *Heller*, 303 F.R.D. at 487-88 (internal quotation marks omitted)).

A party who has objected to a discovery request must, in response to a Rule 37(a) motion to compel, urge and argue in support of its objection to an interrogatory or

request, and, if it does not, it waives the objection. *See OrchestrateHR*, 178 F. Supp. 3d at 507 (citing *Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 (D. Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999)).

Federal Rules of Civil Procedure 26(b) and 34 have been amended, effective December 1, 2015. For the reasons the Court has previously explained, the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr*, 312 F.R.D. at 463-69. Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the

proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that any discovery request that is relevant to any party's claim or defense fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Accord First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, No. CV 15-638, 2017 WL 2267149, at *1 (E.D. La. May 24, 2017) ("In this instance, defendant has offered nothing more than a boilerplate proportionality objection, without providing any information concerning burden or expense that the court would expect to be within defendant's own knowledge.").

The party seeking discovery, to prevail on a motion to compel, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is also subject to Federal Rule of Civil

Procedure 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3). *See generally Heller*, 303 F.R.D. at 475-77, 493-95.

But the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or fails the required proportionality calculation or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's

fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A); *accord Washington v. M. Hanna Const. Inc.*, 299 F. App'x 399, 402 (5th Cir. 2008).

Federal Rules of Civil Procedure 37(a)(5)(B) and 37(a)(5)(C) further provide in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C); *accord De Angelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir. 2008).

"[A] motion is 'substantially justified' if there is a genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]." *De Angelis*, 265 F. App'x at 398 (internal quotation marks omitted); *see also Heller*, 303 F.R.D. at 477 ("The United States Supreme Court has defined 'substantially justified' to mean 'justified in substance or in the main – that is, justified to a degree that could

-16-

satisfy a reasonable person.' 'Substantial justification' entails a 'reasonable basis in both law and fact,' such that 'there is a genuine dispute ... or if reasonable people could differ [as to the appropriateness of the contested action].'" (citations omitted)).

## Analysis

I.   <u>Firebirds' Interrogatory Nos. 3-8 and Request for Production Nos. 6, 7, 8, & 11</u>

Firebirds asks the Court to order that Defendants respond to the following interrogatories and requests for production (to which Defendants' objections and responses and answers are listed below) to include the goods and/or services offered by FRG's restaurants:

> **INTERROGATORY NO. 3:** Describe with particularity all goods and/or services that FRG, including through its subsidiaries and affiliates, offers for sale or intends to offer for sale under the Accused Mark, including by month and year the dates that the goods and/or services were offered, and specify the particular manner in which the Accused Mark was used.
> **OBJECTION(S):** 2 [The request is overbroad, vague and ambiguous] and 4 [The request is unduly burdensome and is designed to incur such unnecessary expense as to be characterized harassing in nature]. In particular, sales by subsidiaries and affiliates are irrelevant because subsidiaries do not use the Accused Mark, and accordingly, none of the sales by any subsidiaries relate in any way to the use of the Accused Mark.
> **ANSWER:** Subject to and without waiving the foregoing objections, FRG is only a holding company that owns restaurants. FRG does not offer for sale any goods or services under the Accused Mark. FRG intends to offer restaurant management services under the Accused Mark as stated in its USTPO application if this dispute is resolved.
>
> **INTERROGATORY NO. 4:** Identify the date of first use in interstate commerce, or in commerce between the United States and a foreign country of the Accused Mark for each product or service described in the answer to Interrogatory No. 3, including all facts and documents relied upon by FRG in claiming each first use date, and the geographic area of such use.
> **ANSWER:** In 2015, the name "Firebird Restaurant Group" appeared on the brand (Snuffers, Meso Maya, etc.) Websites. It was removed after Plaintiff objected to FRG's use. In 2015, the name "A Firebird Restaurant Group

Concept" appeared in small type at the bottom of the Meso Maya menu. It was removed in approximately 2015 after Plaintiff objected to FRG's use. Further, FRG notes that FRG and its predecessor in interest have used the name EL FENIX for a century.

**INTERROGATORY NO. 5:** Identify and describe the channels of trade through which each of FRG's goods and/or services, including the goods and/or services of FRG's affiliates, that bear or will bear the Accused Mark are sold or offered for sale.

**OBJECTION(S):** The request assumes facts which are not true, specifically, that FRG sells or offers for sale goods and services. As to FRG's affiliates, the request does not seek relevant information which is proportional to the needs of the case as outlined in Fed. Rule of Civ. Pro. 26(b)(1).

**ANSWER:** FRG does not offer goods or services for sale under the Accused Mark.

**INTERROGATORY NO. 6:** Identify the types of purchaser to which FRG advertises and/or offer its goods or services under the Accused Mark.

**OBJECTION(S):** The request assumes facts which are not true.

**ANSWER:** FRG does not advertise or offer goods or services for sale under the Accused Mark.

**INTERROGATORY NO. 7:** Identify and describe with specificity all promotions and/or advertisements ever used in connection with the Accused Mark.

**OBJECTION(S):** 1 [The request does not seek relevant information which is proportional to the needs of the case as outlined in Fed. Rule of Civ. Pro. 26(b)(1)], 2 [The request is overbroad, vague and ambiguous] and 4 [The request is unduly burdensome and is designed to incur such unnecessary expense as to be characterized harassing in nature].

**ANSWER:** FRG does not advertise goods or services for sale using the Accused Mark. FRG does use its name on its internet website, but does no offer for sale goods or services using the Accused Mark. With regard to promotions, FRG has twice sponsored a 5K run.

**INTERROGATORY NO. 8:** State the annual dollar amount FRG spent on marketing, promotions, and/or advertising under the Accused Mark from 2008 to present, describe in detail how you calculated the amount, and specify the type of marketing, promotion, or advertisement, and identify all documents upon which FRG relies in support of its calculations.

**OBJECTION(S):** 1 [The request does not seek relevant information which is proportional to the needs of the case as outlined in Fed. Rule of Civ. Pro. 26(b)(1)] and 4 [The request is unduly burdensome and is designed to incur such

-18-

unnecessary expense as to be characterized harassing in nature]. The phrase "under the Accused Mark" is vague and ambiguous.
**ANSWER:** FRG does not advertise goods or services for sale using the Accused Mark. With regard to the 5K run, Defendants will supplement.

**REQUEST FOR PRODUCTION NO. 6:** All documents that reflect, refer to, relate to or evidence all goods and services with which the Accused Mark, including any variations of the Accused Mark, is used in connection.
**OBJECTION(S):** 1 [The request does not seek relevant information which is proportional to the needs of the case as outlined in Fed. Rule of Civ. Pro. 26(b)(1)], 2 [The request is overbroad, vague and ambiguous] and 4 [The request is unduly burdensome and is designed to incur such unnecessary expense as to be characterized harassing in nature].
**RESPONSE:** Subject to and without waiving the foregoing objection, a sample of the use of the mark in FRG email will be produced under separate cover.

**REQUEST FOR PRODUCTION NO. 7:** All documents that reflect, refer to, relate to or evidence the channels of trade through which Defendants offer or intend to offer for sale and sell goods and/or services under the Accused Mark.
RESPONSE: No such documents exist.

**REQUEST FOR PRODUCTION NO. 8:** All documents that reflect, refer to, relate to or evidence the purchasers of goods and/or services offered under the Accused Mark.
**OBJECTION(S):** 1 [The request does not seek relevant information which is proportional to the needs of the case as outlined in Fed. Rule of Civ. Pro. 26(b)(1)], 2 [The request is overbroad, vague and ambiguous] and 4 [The request is unduly burdensome and is designed to incur such unnecessary expense as to be characterized harassing in nature].
**RESPONSE:** No such documents exist.

**REQUEST FOR PRODUCTION NO. 11:** All documents that reflect, refer to, relate to or evidence Defendants' costs from marketing, promotions, and/or advertising under the Accused Mark on a monthly and yearly basis from 2008 forward.
**OBJECTION(S):** 2 [The request is overbroad, vague and ambiguous] and 4 [The request is unduly burdensome and is designed to incur such unnecessary expense as to be characterized harassing in nature]. The phrase "under the Accused Mark" is vague and ambiguous.
**RESPONSE:** Subject to the foregoing objections, and without waiving same, responsive documents will be produced.

-19-

Firebirds explains that it "requested information regarding Defendants' use of the Infringing Mark, including through its subsidiaries and affiliates, as it relates to Firebirds' claims" and asserts that "this is a central issue to be decided in this case: whether Defendants' use of the Infringing Mark 'Firebird' is sufficiently tied to the restaurant services FRG offers through its subsidiary restaurants to infringe on Firebirds' well-established trademark rights." Dkt. No. 27 at 10, 11 (emphasis omitted). Firebirds explains that it "contends that it is, but this is not an issue that must be decided for Firebirds to be able to obtain discovery from FRG regarding its use of the Infringing Mark and that of FRG's subsidiaries," where, "[f]or purposes of this discovery dispute, the bottom line is that information regarding the restaurant services offered by FRG's restaurants is relevant to Firebirds' claims such that the information is discoverable." *Id.* at 11-12. Firebirds therefore argues that it "is entitled to discovery on Defendants' use and intended use of the Infringing Mark as well as the goods and services offered by Defendants, including through its subsidiaries and affiliates," and that "[t]his information is directly relevant to the likelihood of confusion factors for Firebirds' claims of trademark infringement, false designation of origin and unfair competition." *Id.* at 13 (emphasis omitted).

According to Firebirds, "Defendants responded that FRG itself does not offer goods and or services under the Infringing Mark and that the sales by FRG's subsidiary restaurants are irrelevant because 'none of the sales by any subsidiaries relate in any way to the use of the [Infringing] Mark'"; "Defendants further respond that the Infringing Mark 'has not been used ... in commerce'"; "[e]ssentially,

Defendants are improperly claiming that they use their corporate structure to separate the Infringing Mark (used by the parent company) on the one hand and the goods and services (offered through the subsidiary companies) on the other hand"; but, "in practice, FRG and all of its subsidiaries are operated as a single business enterprise with common ownership, members, employees, operations, policies, practices, and even consolidated accounting." *Id.* at 11. Firebirds contends that "Defendants can argue at the appropriate time that FRG's use of the Infringing Mark is not in connection with any goods or services, as unpersuasive as that argument is" but that "it is not a legitimate basis to refuse discovery into FRG's restaurant subsidiaries' goods and services as not relevant" and that "[t]he very fact that the request involves a central issue belies FRG's objection." *Id.* at 13. As Firebirds' MTC points out, "'[a] party cannot refuse to produce a requested document or information simply because it is relevant to a claim or defense on which the producing party believes that it will prevail.'" *Id.* at 15 (quoting *Heller*, 303 F.R.D. at 489); *see also* Dkt. No. 41 at 5.

Defendants respond that Firebirds' discovery requests "either requested information regarding the named defendants' use of the 'Firebird' term, which Defendants provided in full, or requested information regarding the Restaurant Subsidiaries, none of which made any use of the mark." Dkt. No. 35 at 5. According to Defendants, each of Firebirds' Interrogatory Nos. 3, 4, 5, 6, 7, 8, and 10 "inquired about non-party subsidiaries, which do not sell goods or services using the mark, yet sought information regarding use of the mark," and each of Firebirds' Request for Production Nos. 6, 7, 8, 11, and 12 "request documents relating to services with which the 'Accused

-21-

Mark' is used." *Id.* at 5-6. Defendants explain that, in response to these discovery requests, "Defendants objected to both: (1) the relevancy of each Request with regard to the Restaurant Subsidiaries; and (2) Plaintiff's definition of 'Defendants' and 'You' because the definitions included the Restaurant Subsidiaries" and, "[t]hen, in response to each Request over which Plaintiff now complains, Defendants provided responsive information as to FRG and FIP – the only two entities that make any 'use' of the 'Firebird' term." *Id.* at 7.

Defendants argue that they "fully responded to Plaintiff's discovery when Defendants provided the extremely limited instances in which any entity under Defendants' corporate umbrella used the 'Firebird' term – not merely as a trademark (which none do), but even as a trade name or other non-infringing use" – and that Firebirds' MTC "depends upon the assumption that the Restaurant Subsidiaries use the mark" when "[t]hey do not." *Id.* at 8.

Firebirds replies that "Defendants cannot refuse discovery on the basis that they are not infringing and therefore no responsive documents exist"; that "Defendants cannot be permitted to abuse their corporate structure to artificially separate the corporate entity that is actually using the Infringing Mark from the wholly-owned entities that are purportedly providing the goods and services"; that, "[i]f either of these arguments held water, it would be a simple matter for trademark infringers to avoid liability"; and that, "[m]ore importantly, neither is a valid basis to refuse discovery." Dkt. No. 41 at 2.

And Firebirds contends that "Defendants also incorrectly argue that Firebirds'

-22-

discovery requests require that the Restaurant Subsidiaries themselves use the Infringing Mark" but that "this is a strawman argument," where, "because Defendants uses the Infringing Mark to advertise FRG to consumers as the source of the restaurants it owns, FRG is the source of those restaurant services," and "[i]t is not necessary that the Restaurant Subsidiaries themselves use the mark, even though there is evidence of that fact and evidence that FRG is directly offering restaurant services." *Id.* Firebirds asserts that it "is entitled to discovery on how Defendants are using the Infringing Mark as it relates to the likelihood of confusion analysis for trademark infringement, namely: the goods and services FRG provides, the date FRG first began using the Infringing Mark, the channels of trade in which FRG operates, FRG's purchasers, FRG's advertising." *Id.* at 3.

The Court cannot agree for the most part, and the problem is with the wording of Firebirds' discovery requests – and, for that matter, with Defendants' objections.

Turning first to the latter, as Firebirds notes, several of Defendants' objections to these interrogatories and requests for production – which were made by numbering objections in a preliminary "Objection Key" and referring back to them by number for each response or answer – are not made with the required specificity and explanation of the basis for the objection as to the particular interrogatory or request and what portions it is not answering or responding to based on its objections and why. Those objections – specifically Objections 2 and 4 to Interrogatory No. 3; Objections 1, 2, and 4 to Interrogatory No. 7; Objections 1 and 4 and the "vague and ambiguous" to Interrogatory No. 8; Objections 1, 2, and 4 to Request for Production No. 6; Objections

-23-

1, 2, and 4 to Request for Production No. 8; and Objections 2 and 4 and the "vague and ambiguous" to Request for Production No. 11 – are overruled based on Defendants' failure to more specifically explain them and, further, to then press them in response to Firebirds' MTC.

And Defendants' answer to Interrogatory No. 3 is made "[s]ubject to and without waiving the foregoing objections." So, too, is the response to Request for Production Nos. 6 and 11. Firebirds does not complain about this, likely because its own answers and objections to Defendants' discovery requests employ the same approach. *See* Dkt. No. 28, Exs. 1 & 9. But, while all parties have engaged in this practice here, as the Court has previously explained and noted above, it is improper. *See Carr*, 312 F.R.D. at 470 (citing *Heller*, 303 F.R.D. at 487-88). What this approach to responding to Interrogatory No. 3 and Request for Production Nos. 6 and 11 "subject to" objections is meant to convey remains unclear, but it serves only to muddy what is, at least as to Interrogatory No. 3 and Request for Production No. 6, otherwise a clear answer or response. Firebirds and now the Court are left to wonder, for example, how Interrogatory No. 3 or Request for Production No. 6 is "vague and ambiguous" and how, if at all, that affects the answer or response that Defendants served. Likewise, Defendants provide no explanation for how and why "[t]he phrase 'under the Accused Mark' is vague and ambiguous" as used in Request for Production No. 11 and how, if at all, that affects the response that Defendants served "[s]ubject to" that objection, "and without waiving same."

Finally, Defendants are not justified in refusing to produce information and documents regarding the Restaurant Subsidiaries in response to these interrogatories and requests for production because, as they explain in, for example, objecting to Interrogatory No. 3, Defendants believe that they have the better of – and will prevail on – this central issue on the merits. Those relevance objections to Interrogatory Nos. 3, 5, 7, and 8 and Request for Production Nos. 6 and 8 are overruled.

But the Court finds no basis to compel further or different responses insofar as Defendants are responding that there is no responsive information or documents because Firebirds' interrogatories and requests incorporate a determination in their favor on the outcome of what Firebirds itself identifies as a central issue on the merits.

In Defendants' view, factually and legally, FRG has not offered for sale or intended to offer for sale goods and/or services under the Accused Mark through its subsidiaries and affiliates (Interrogatory Nos. 3 & 4 and Request for Production Nos. 7 & 8); sold or offered for sale goods and/or services, including the goods and/or services of its affiliates, that bear or will bear the Accused Mark (Interrogatory No. 5) and with which the Accused Mark is used (Request for Production No. 6); or advertised and/or offered its or subsidiaries' and affiliates' goods or services under the Accused Mark (Interrogatory Nos. 6, 7, & 8).

But Firebirds expressly tied these interrogatories and requests to use or sales or offers for sale "under the Accused Mark" or while "bearing the Accused Mark," and Defendants are within their rights to answer and respond based on their understanding of the facts.

-25-

Firebirds may have done so to try to comply with the requirement that a request for production "must describe with reasonable particularity each item or category of items to be inspected" or produced. FED. R. CIV. P. 34(b)(1)(A). But a Rule 34(a) request made with reasonable particularity does not require a reasonable attorney or party attempting to properly respond "to ponder and to speculate in order to decide what is and what is not responsive." *Bruggeman ex rel. Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004) (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, No. CIV.A.94-2304-EEO, 1995 WL 526533, at *3 (D. Kan. Aug. 31, 1995)). To comply with the reasonable particularity requirement here, Firebirds must describe the documents or information it seeks in objective terms under which Defendants and the Court can identify what must be produced and provided without resolving a factual or legal issue in Firebirds' favor.

Put another way, Firebirds did not, for example, ask Defendants to describe with particularity all goods and/or services that FRG or its subsidiaries and affiliates offers for sale or intends to offer for sale during a specified time period in which Firebirds believes the Infringing Mark was, by its light, in use "in connection with restaurant services," Dkt. No. 38 at 9 – with an explanation at the ready as to why these materials would be relevant to its trademark claims, to which a protestation that none of the requested information is relevant might have less purchase. But, when asked what goods or services the Restaurant Subsidiaries provided "under the Accused Mark," Defendants unsurprisingly insist on answering consistent with their view on the merits of this central issue to be decided in this case.

-26-

Because Defendants are not required to concede that position in discovery, and the Court will not resolve it on a discovery dispute, there is no basis to compel Defendants to provide different or additional answers or responses. Nor are Defendants required, in answering and responding to Firebirds' discovery requests as worded, to accept Firebirds' position that Defendants use the Infringing Mark to advertise FRG to consumers as the source of the restaurants it owns and FRG therefore is the source of those restaurant services.

But the Court also must overrule Defendants' objections to Request for Production No. 11, including based on the phrase "under the Accused Mark" is vague and ambiguous. The Court has previously explained that a "party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity"; that "[a] party objecting on these grounds must explain the specific and particular way in which a request is vague"; that "[t]he responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories" and, "[i]f necessary to clarify its answers, … may include any reasonable definition of the term or phrase at issue"; and that, "[i]f a party believes that the request is vague, that party [should] attempt to obtain clarification [by conferring with the requesting party] prior to objecting on this ground." *Heller*, 303 F.R.D. at 491-92 (internal quotation marks and citations omitted). A vague and ambiguous objection does not justify a complete refusal to respond or answer unless a request is so vague or ambiguous as to be incapable of reasonable interpretation and prohibit a response. *See id.* at 492. Having answered Interrogatory No. 8, Defendants can similarly make sense

of Request for Production No. 11 as worded and based on Defendants' understanding of the facts.

And Defendants' response – "[s]ubject to and without waiving" three broadly stated general objections that Defendants incorporated by reference without further explanation – to Request for Production No. 6 provides no explanation as to why Defendants are producing only "a sample of the use of the mark in FRG email" in response to that request.

Defendants must, by **July 31, 2018**, serve on Firebirds' counsel a complete written response (without objections), and produce all responsive documents (based on Defendants' understanding of what is responsive to these requests as worded), to Request for Production Nos. 6 and 11.

The Court otherwise DENIES Firebirds' MTC asking the Court to order Defendants to supplement their responses to Firebirds' Interrogatory Nos. 3 through 8 and Request for Production Nos. 7 and 8 to include FRG's subsidiary restaurants and other affiliates and enters a protective order precluding any requirement for Defendants to further answer or respond to Interrogatory Nos. 3 through 8 and Request for Production Nos. 7 and 8, subject to their supplementation obligations under Rule 26(e).

II.    Firebirds' Interrogatory No. 10 and Request for Production No. 12

Firebirds asks the Court to order that Defendants respond to the following interrogatory and request for production (to which Defendants' objections and

responses and answers are listed below) to include all of FRG's financial information,

including the consolidated financials with its subsidiaries:

> **INTERROGATORY NO. 10:** Identify with specificity and detail FRG's total revenue, costs, and profits for goods and/or services with which the Accused Mark is used, on a monthly and yearly basis from 2008 forward.
> **OBJECTION(S):** 1 [The request does not seek relevant information which is proportional to the needs of the case as outlined in Fed. Rule of Civ. Pro. 26(b)(1)], 2 [The request is overbroad, vague and ambiguous], 4 [The request is unduly burdensome and is designed to incur such unnecessary expense as to be characterized harassing in nature] and 5 [The request seeks information which is confidential, proprietary and a trade secret]. The term "revenue" is vague and ambiguous. FRG does not have any sales. There is no accounting for FRG that is not on a consolidated basis with its subsidiaries. FRG objects to producing any financial information about its subsidiaries (the individual brands) on the basis that none of the subsidiaries use the Accused Mark in any way and none of the sales made by the subsidiaries are related in any way to alleged use of the Accused Mark.
> **ANSWER:** Subject to and without waiving the foregoing objections, please see documents produced under separate cover.

> **REQUEST FOR PRODUCTION NO. 12:** All documents that reflect, refer to, relate to or evidence Defendants' total revenue, costs, and profits on a monthly and yearly basis from 2008 forward.
> **OBJECTION(S):** 1 [The request does not seek relevant information which is proportional to the needs of the case as outlined in Fed. Rule of Civ. Pro. 26(b)(1)], 2 [The request is overbroad, vague and ambiguous], 4 [The request is unduly burdensome and is designed to incur such unnecessary expense as to be characterized harassing in nature] and 5 [The request seeks information which is confidential, proprietary and a trade secret]. The term "revenue" is vague and ambiguous. There is no accounting for FRG that is not on a consolidated basis. Furthermore, none of FRG's income is derived from "use of the Accused Mark." As a result, FRG objects to producing the documents requested.
> **RESPONSE:** Subject to the foregoing objections, and without waiving same, responsive documents will be produced.

Firebirds contends that, "[o]nce again, Defendants attempt to shield themselves

from their discovery obligations by misusing their corporate structure" and "argue that

-29-

the information is not relevant because FRG's accounting is on a consolidated basis with its subsidiaries, and that because, in its view, the subsidiaries do not use the Infringing Mark, the sales are not attributable to the use of the Infringing Mark." Dkt. No. 27 at 15 (emphasis omitted). According to Firebirds, "[n]ot only is this an improper basis to withhold discovery, it is demonstrably false." *Id.* Firebirds argues that "Defendants again put the cart before the horse – arguing that because Defendants believe that they have not infringed Firebirds' trademarks that none of Defendants' sales are attributable to the infringement." *Id.*

Firebirds further asserts that it "is entitled to discovery on Defendants' sales, regardless of whether Defendants have chosen to prepare their accounting on a consolidated basis with FRG's subsidiaries"; that "Defendants' sales are directly relevant to Firebirds' damages claims"; that "[i]t is then Defendants' burden to prove whether any of its sales are not attributable to their use of the Infringing Mark"; that "Defendants cannot first refuse to produce relevant information based on their argument that none of the sales are attributable to their use of the Infringing Mark"; and that "Defendants will have the opportunity to make that argument at the appropriate time" but that, "[f]or now, Firebirds is entitled to discovery of this highly relevant information." *Id.* at 16.

Defendants respond that Firebirds' "motion to compel Defendants to provide financial information for the Restaurant Subsidiaries that do not even use the Accused Mark should be denied" because Interrogatory No. 10 and Request for Production No. 12 "seek information that is not relevant to any claim or defense in this litigation"

insofar as, "[t]o the extent Plaintiff's requests are not limited to information arising from use of the Accused Mark, Plaintiff's requests exceed the bounds of relevancy and must be denied." Dkt. No. 35 at 13, 14. First, Defendants contend, while Firebirds' "Interrogatory number 10 is limited to information regarding services 'with which the Accused Mark is used,'" "[f]or the reasons stated above, no such information regarding the Restaurant Subsidiaries – beyond that for subsidiary Meso Maya, which Defendants have already provided before Plaintiff filed this motion – exists." *Id.* at 14.

And Defendants assert that, because "Plaintiff did not limit its Request For Production number 12 to documents showing 'revenues, costs, and profits' resulting from the sale of goods or services bearing the Accused Mark," "[t]his Request is thus overly broad and detached from any claim or defense in this action," and "Defendants objected to Plaintiff's Request For Production number 12 as such and responded on behalf of the defendant whose name actually bore the Accused Mark – '[t]here is no accounting for FRG that is not on a consolidated basis. Furthermore, none of FRG's income is derived from 'use of the Accused Mark.' As a result, FRG objects to producing the documents requested.'" *Id.* According to Defendants, "[n]othing more is required." *Id.*

Firebirds replies that "[t]he Lanham Act provides that Firebirds is required to prove Defendants' sales and that the burden then shifts to Defendants to prove all elements of cost or deduction claimed" and that "Defendants will have the opportunity to argue that their claimed costs or deductions at trial." Dkt. No. 41 at 5-6. According to Firebirds, "[i]t is not a valid basis to refuse discovery and obstruct Firebirds' ability

to prove its case," and "[t]he fact that Defendant FRG chooses to consolidate its financials with its subsidiaries is also not a valid basis to refuse production of its financials. Defendants will have the opportunity to make that argument at trial. For now, Firebirds is entitled to discovery of this highly relevant information." *Id.* at 6.

As with several requests discussed above, Defendants' answer to Interrogatory No. 10 and response to Request for Production No. 12 are improperly made "[s]ubject to and without waiving the foregoing objections," as is their response to Request for Production No. 12. And Defendants again use general objections incorporated without sufficient specific explanation – specifically, Objections 2, 4, and 5 and the "vague and ambiguous" objection to Interrogatory No. 10 and Objections 2, 4, and 5 and the "vague and ambiguous" objection to Request for Production No. 12, all of which are overruled.

And, as to Request for Production No. 12, Defendants' refusal to provide all responsive documents does improperly rely on its view of the merits of Firebirds' claims. It asks for "documents that reflect, refer to, relate to or evidence Defendants' total revenue, costs, and profits on a monthly and yearly basis from 2008 forward," which is reasonably particular and which Firebirds has persuasively explained to be relevant to its claims and properly within the scope of Rule 26(b)(1) discovery. As Defendants themselves note, this request does not impermissibly incorporate or assume Firebirds' view on a contested issue on the merits. Defendants cannot have it both ways and cannot refuse to produce these requested documents or information simply because they are relevant to a claim on which Defendant feel confident under

the law that they will prevail. Firebirds' claims are based in part on the alleged use of the Infringing Mark in connection with restaurant services, and the Court will not engage in a preemptive merits analysis to determine whether Firebirds is entitled to discovery on the claim that it has pleaded and is pursuing. And, further, as Firebirds correctly notes, that FRG chooses to consolidate its financials with its subsidiaries is no basis to deny Firebirds discovery of this critical information. The Court overrules Defendants' relevance objections to Request No. 12.

On the other hand, Firebirds' MTC as to Interrogatory No. 10 – which asks for information on "goods and/or services with which the Accused Mark is used" – must be denied for the same reasons explained above as to Interrogatory Nos. 3 through 8 and Request for Production Nos. 7 and 8, although, for the same reasons explained above, the Court overrules the relevance objection to Interrogatory No. 10.

Defendants must, by **July 31, 2018**, serve on Firebirds' counsel a complete written response (without objections), and produce all responsive documents (based on Defendants' understanding of what is responsive to these requests as worded), Request for Production No. 12.

But the Court otherwise DENIES Firebirds' MTC asking the Court to order Defendants to respond to Firebirds' Interrogatory No. 10, as worded, to include all of FRG's financial information, including the consolidated financials with its subsidiaries, and enters a protective order precluding any requirement for Defendants to further answer Interrogatory No. 10, subject to their supplementation obligations under Rule 26(e).

-33-

III.    <u>Defendants' correspondence</u>

Firebirds asks the Court to order Defendants to produce all correspondence responsive to each of Firebirds' requests for production and then, in its reply, Firebirds cites the following definition from its requests for production:

> "Documents" shall be construed in the broadest sense permissible under the Civil Rules of Procedure and means, without limitation: any written, printed, typed, photocopied, photographed, recorded, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds, or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings. Without limiting the generality of the foregoing, "documents" includes, but is not limited to: correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, ledgers, work sheets, spreadsheets, cancelled checks, bank statements, proofs, prescriptions, labels, sheets, punch cards, print-out sheets, appointment books, registers, charts, tables, papers, financial statements, purchase orders, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings or of other communications of any type, including inter-office and intra-office communications, electronic mail/messages and/or "e-mail," electronically stored telephone messages and/or "voice mail," questionnaires, surveys, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing, word processing, or other computer equipment, all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into useable form), including, without limitation, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes, and any preliminary versions, as well as drafts or revisions, of any of the foregoing.

And Firebirds also notes in its reply that its Request for Production No. 18 seeks: "All documents, including but not limited to, correspondence, memoranda and emails,

either created or received by Defendants which refer to either Firebirds or Firebirds'
Marks."

But, in its MTC, Firebirds asserts primarily that "Defendants have produced no
other correspondence, such as correspondence related to the selection and adoption of
the Infringing Mark, instructions regarding the use of the mark, any agreements
relating to the mark, Firebirds or the litigation," and that "[i]t is difficult to believe
that Defendants do not have any other letters or emails responsive to Firebirds'
requests." Dkt. No. 27 at 17.

Defendants respond that, throughout the MTC, Firebirds "identifies only
Request For Production numbers 6-8 and 11," which "do not request 'correspondence.'"
Dkt. No. 35 at 15. And, Defendants assert, Firebirds "ignores that Defendants have
produced what limited correspondence does exist," and ""[d]iscovery is on-going and,
in the event that Defendants discover additional correspondence that is relevant to
Plaintiff's requests, Defendants will produce it." *Id.*

In addition to citing the "Documents" definition and Request for Production No.
18 for the first time, Firebirds' reply also explains that "Firebirds raised the issue of
the lack of any correspondence produced by Defendants in its meet-and-confer letter
sent March 14, 2018" and asserts that "[i]t is clear that Defendants did not conduct a
complete search for responsive documents." Dkt. No. 41 at 9.

The Court cannot agree that that is what this record before it shows.

A party cannot produce what it does not have or does not exist, and so, the Court
cannot compel a party to produce non-existent documents. *See ORIX USA Corp. v.*

*Armentrout*, No. 3:16-mc-63-N-BN, 2016 WL 4095603, at \*5 (N.D. Tex. Aug. 1, 2016) (collecting cases).

And Firebirds' MTC does not provide the necessary information for the Court to order Defendants to engage in a further search for allegedly unproduced correspondence, where Firebirds' MTC fails to "specifically and individually identify each discovery request in dispute and specifically, as to each request, identify the nature and basis of the dispute, including, for example, explaining ... how a response or answer is deficient or incomplete, and ask the Court for specific relief as to each request" and does not "include a concise discussion of the facts and authority that support the motion as to each discovery request in dispute." *Samsung Elecs. Am. Inc. v. Chung*, ___ F.R.D. ___, No. 3:15-cv-4108-D, 2017 WL 896897, at \*13 (N.D. Tex. Mar. 7, 2017) (quoting *Harrison v. Wells Fargo Bank, N.A.*, No. 3:13-cv-4682-D, 2016 WL 1392332, at \*7 (N.D. Tex. Apr. 8, 2016) (citing Fed. R. Civ. P. 7(b)(1); Fed. R. Civ. P. 37(a); N.D. Tex. L. Civ. R. 5.2(3); N.D. Tex. L. Civ. R. 7.1))).

The Court denies the MTC on this ground.

IV.    Award of expenses

Under Rule 37(a)(5)(C), considering all of the circumstances here and the Court's rulings above, the parties will bear their own expenses, including attorneys' fees, in connection with Firebirds' MTC.

But, had Firebirds phrased the requests at issue differently – and had the Court then resolved the MTC more in Firebirds' favor – this result under Rule 37(a)(5) may

have been different based on Defendants' manner of objecting and responding "subject to" those objections.

The failures to follow the Federal Rules' requirements for specificity in objecting and responding and answering, and answering or responding "subject to and without waiving objections," are practices that attorneys must stop, as the undersigned and many other judges in this circuit and elsewhere have now made clear for several years. *See, e.g.*, *Pitre v. Epps*, Civ. A. No. 18-1562, 2018 WL 3094367, at *2 (E.D. La. June 22, 2018) (van Meerveld, J.); *Eagle Railcar Services-Roscoe, Inc. v. NGL Crude Logistics, LLC*, No. 1:16-cv-153-BL, 2018 WL 2317696, at *18 (N.D. Tex. May 22, 2018) (Frost, J.); *Star Creek Ctr., LLC v. Seneca Ins. Co., Inc.*, Civ. A. No. 4:17-CV-00607, 2018 WL 1934084, at *2-*3 (E.D. Tex. Apr. 23, 2018) (Mazzant, J.); *Walters v. Sentry Link, LLC*, No. A-16-CV-383-LY, 2018 WL 837611, at *3 (W.D. Tex. Feb. 9, 2018) (Austin, J.); *Tsanacas v. Amazon.com, Inc.*, Civ. A. No. 4:17-CV-00306, 2018 WL 324447, at *2-*3 (E.D. Tex. Jan. 8, 2018) (Mazzant, J.); *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2017 WL 5890923, at *1-*2 (N.D. Ill. Nov. 29, 2017) (Cole, J.); *Team Contractors, L.L.C. v. Waypoint NOLA, L.L.C.*, Civ. A. No. 16-1131, 2017 WL 3216582, at *2 (E.D. La. July 28, 2017) (Wilkinson, J.); *Columbia Mut. Ins. Co. v. Kerrville Prof'l Props., Ltd.*, Civ. No. SA-16-CA-00973-XR, 2017 WL 7805755, at *2 (W.D. Tex. July 12, 2017) (Primomo, J.); *Lechuga v. Magallanes*, No. MO:16-CV-00269-RAJ-DC, 2017 WL 8180781, at *2, *6 (W.D. Tex. June 1, 2017) (Counts, J.); *Matthews v. J & J Serv. Solutions, LLC*, Civ. A. No. 16-621-BAJ-EWD, 2017 WL 2256963, at *4 & n.31 (M.D. La. May 23, 2017) (Wilder-Doomes, J.); *Source*

*Network Sales & Marketing, LLC v. Jiangsu Mega Motor Co.*, No. 3:16-cv-1202-B-BK, 2017 WL 7596913, at *4 (N.D. Tex. May 15, 2017) (Toliver, J.); *Sell v. Universal Surveillance Sys., LLC*, No. A-16-CV-660-RP-ML, 2017 WL 2999420, at *1 (W.D. Tex. Apr. 19, 2017) (Lane, J.); *RealPage, Inc. v. Enterprise Risk Control, LLC*, Civ. A. No. 4:16-CV-00737, 2017 WL 1165688, at *2-*4 (E.D. Tex. Mar. 29, 2017) (Mazzant, J.); *Tadlock v. Arctic Cat Sales, Inc.*, Civ. A. No. 15-766-JJB-EWD, 2017 WL 1032516, at *8-*9 (M.D. La. Mar. 17, 2017) (Wilder-Doomes, J.); *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 185-87 (N.D. Iowa 2017) (Bennett, J.); *Crum & Forster Specialty Ins. Co. v. Great West Cas. Co.*, No. EP-15-cv-00325-DCG, 2016 WL 10459397, at *4 n.7 (W.D. Tex. Dec. 28, 2016) (Berton, J.); *Stringer v. Cascos,* Civ. No. SA-16-CA-257-OG, 2016 WL 8914448, at *1-*2 (W.D. Tex. Dec. 14, 2016) (Garcia, C.J.); *Eubank v. Lockhart Indep. Sch. Dist.*, No. A-15-CV-1019-RP-ML, 2016 WL 11214437, *2, *5 (W.D. Tex. Nov. 8, 2016) (Lane, J.); *Latham v. Polaris Indus., Inc.,* No. 3:15-cv-1209-B, 2016 WL 7389241, at *2 (N.D. Tex. Oct. 5, 2016) (Stickney, J.); *Rosalez Funez v. E.M.S.P., LLC*, Civ. A. No. 16-1922, 2016 WL 5337981, at *2-*3 (E.D. La. Sept. 23, 2016) (Roby, J.); *Hopkins v. Green Dot Corp.*, Civ. No. SA-16-CA-00365-DAE, 2016 WL 8673861, at *3 (W.D. Tex. Aug. 16, 2016) (Primomo, J.); *In re Adkins Supply, Inc.*, 555 B.R. 579, 587-88 (Bkrtcy. N.D. Tex. 2016) (Jones, J.); *Crow v. ProPetro Servs., Inc.*, No. MO:15-CV-00149-RAJ-DC, 2016 WL 9776368, at *3-*4 (W.D. Tex. June 6, 2016) (Counts, J.); *Southwest Insulation, Inc. v. Gen'l Insulation Co.*, No. 4:15-cv-601-O, 2016 WL 9244822, at *2-*5 (N.D. Tex. Apr. 25, 2016) (O'Connor, J.); *Rivera v. United States*,

No. EP-15-CV-21-KC, 2015 WL 13649403, at *7 (W.D. Tex. Dec. 22, 2015) (Berton, J.);

*New Belgium Brewing Co., Inc. v. Travis County Brewing Co. LLC*, No. A-15-CV-452

LY, 2015 WL 13227999, at *1-*2 (W.D. Tex. Dec. 18, 2015) (Austin, J.); *Emerald City*

*Mgmt., LLC v. Kahn*, No. 4:14-cv-358, 2015 WL 11170165, at *6-*7 (E.D. Tex. Sept. 2,

2015) (Clark, J.); *Gonzalez v. Volkswagen Group of Am., Inc.*, No. A-14-CV-574-LY-ML,

2015 WL 5097271, at *2 (W.D. Tex. Aug. 28, 2015) (Lane, J.); *Blair v. Pride Indus.,*

*Inc.*, EP-14-CV-00183-DCG-RFC, 2015 WL 10818665, at *1-*6 (W.D. Tex. July 17,

2015) (Castaneda, J.); *Roca Resource Co., Inc. v. Devon Energy Prod. Co., L.P.*, No.

P:14-CV-00085-DAE-DC, 2015 WL 12746117, at *7 (W.D. Tex. July 2, 2015) (Counts,

J.); *Simon v. State Farm Lloyds*, Civ. A. No. 7:14-CV-251, 2015 WL 12777219, at *4

(S.D. Tex. Apr. 9, 2015) (Alvarez, J.); *Chevron Midstream Pipelines LLC v. Settoon*

*Towing LLC*, Civ. A. Nos. 13-2809 & 13-3197, 2015 WL 269051, at *3-*5 (E.D. La. Jan.

21, 2015) (North, J.); *Cummins v. Lollar*, No. 4:12-cv-560-Y, 2014 WL 12585670, at *2

(N.D. Tex. Aug. 26, 2014) (Cureton, J.); *see also* Steven S. Gensler, Lee H. Rosenthal,

*Breaking the Boilerplate Habit in Civil Discovery*, 51 AKRON L. REV. 683 (2017).

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part

and DENIES in part Plaintiff Firebirds International, LLC's First Motion to Compel

[Dkt. No. 27].

Finally, although this Memorandum Opinion and Order may not contain any

confidential information, the Court will, out of an abundance of caution, enter the

Memorandum Opinion and Order under seal because some of the underlying motion papers were filed under seal.

The parties are further ORDERED to file a joint status report by **July 31, 2018** setting forth their views on whether this Memorandum Opinion and Order contains any confidential information – and, if so, where – and should remain sealed.

SO ORDERED.

DATED: July 16, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE