# Exhibit D

APP. 000018

1                    IN THE UNITED STATES DISTRICT COURT

                     FOR THE NORTHERN DISTRICT OF TEXAS

2                              DALLAS DIVISION

3    FIREBIRDS INTERNATIONAL, LLC,

4                    Plaintiff,

5    vs.                                    Civil Action No.

                                            3:17-CV-02719-B

6    FIREBIRD RESTAURANT GROUP, LLC,

     FIREBIRD IP, LLC, and MICHAEL D.

7    KARNS,

8                    Defendants.        /

9


10


11          VIDEOTAPED DEPOSITION OF ROBERT A. HUTCHINS

12                          * * * * *

13                      Taken by Defendants

14                   Charlotte, North Carolina

15                      November 19, 2018

16                          * * * * *

17                       Reported by:

18                     TAVI L. FRAGA, RPR

19             Registered Professional Reporter

20


21


22


23


24


25

```
 1                    A P P E A R A N C E S

 2

 3    COUNSEL FOR PLAINTIFF:

 4               W. THAD ADAMS III, ESQUIRE

 5               SHUMAKER, LOOP & KENDRICK, LLP

 6               101 South Tryon Street

 7               Suite 2200

 8               Charlotte, North Carolina  28280

 9               704.945.2901

10               tadams@slk-law.com

11

12    COUNSEL FOR DEFENDANTS:

13               RICHARD A. ILLMER, ESQUIRE

14                 (Via Teleconference)

15               HUSCH BLACKWELL, LLP

16               2001 Ross Avenue

17               Suite 2000

18               Dallas, Texas  75201

19               214.999.6100

20               rick.illmer@huschblackwell.com

21

22

23

24

25
```

Robert A. Hutchins - November 19, 2018

```
1                    A P P E A R A N C E S
2                         (Continuing)
3
4   COUNSEL FOR DEFENDANTS (Continuing):
5                DUSTIN L. TAYLOR, ESQUIRE
6                   (Via Telephone)
7                HUSCH BLACKWELL, LLP
8                120 South Riverside Plaza
9                Suite 2200
10               Chicago, Illinois  60606
11               312.526.1517
12               dustin.taylor@huschblackwell.com
13
14  ALSO PRESENT:
15               Terry Losardo, Video Specialist
16
17
18
19
20
21
22
23
24
25
```

```
1                    C O N T E N T S
2    WITNESS/EXAMINATION
3    ROBERT A. HUTCHINS
4                                              PAGE
5        By Mr. Illmer                          6
6
7
8                      - - -
9
10
11            I N D E X   O F   E X H I B I T S
12
13   EXHIBIT        DESCRIPTION                PAGE
14      1           Expert Report of Robert A. Hutchins   37
15      2           Expert Rebuttal Report of
16                  Robert A. Hutchins          111
17      3           Supplemental Expert Report of
18                  Robert A. Hutchins          119
19
20
21   REPORTER'S NOTE:
22   * If this transcript contains quoted material,
23   such material is reproduced as read or
24   quoted by the speaker.
25
```

Robert A. Hutchins - November 19, 2018

1          On Monday, November 19, 2018, commencing at

2     9:36 a.m., the videotaped deposition of ROBERT A.

3     HUTCHINS was taken, pursuant to notice and pursuant

4     to the Federal Rules of Civil Procedure, on behalf of

5     the Defendants, at the law offices of Shumaker,

6     Loop & Kendrick, LLP, 101 South Tryon Street,

7     Suite 2200, Charlotte, North Carolina.

8                              * * *

9                     P R O C E E D I N G S

10                             * * *

09:36:00  11          THE VIDEOGRAPHER:  And good morning.  We

09:36:08  12     are going on the record at 9:36 a.m.  Today is

09:36:12  13     Monday, November 19, 2018.  This is the beginning

09:36:15  14     of Video Card No. 1.  We're here for the deposition

09:36:17  15     of Robert A. Hutchins in the case styled Firebirds

09:36:23  16     International, LLC, v. Firebird Restaurant Group,

09:36:26  17     et al.

09:36:27  18          This deposition is taking place in the law

09:36:29  19     offices of Shumaker, Loop & Kendrick, located at

09:36:34  20     101 South Tryon Street, Charlotte, North Carolina.

09:36:37  21     The court reporter is Tavi Fraga.  We're with

09:36:39  22     Dickman Davenport, 4228 North Central Expressway,

09:36:44  23     Suite 101, Dallas, Texas 75206.

09:36:47  24          Would counsel and all those present please

09:36:49  25     state your appearances for the record.

Robert A. Hutchins - November 19, 2018

| | | |
|---|---|---|
| 09:36:53 | 1 | MR. ILLMER:  Richard Illmer and Dustin |
| 09:36:56 | 2 | Taylor on behalf of the defendants. |
| 09:36:58 | 3 | MR. ADAMS:  Thad Adams on behalf of the |
| 09:37:02 | 4 | plaintiff. |
| 09:37:05 | 5 | THE VIDEOGRAPHER:  Thank you.  Madam court |
| | 6 | reporter. |
| | 7 | THE COURT REPORTER:  Please raise your |
| | 8 | right hand.  Do you solemnly swear or affirm under |
| | 9 | the penalties of perjury to tell the truth, the |
| | 10 | whole truth, and nothing but the truth? |
| | 11 | THE WITNESS:  I do. |
| | 12 | THE COURT REPORTER:  Thank you. |
| | 13 | - - - |
| | 14 | Whereupon, ROBERT A. HUTCHINS, having been |
| | 15 | first duly sworn, was examined and testified as |
| | 16 | follows: |
| | 17 | EXAMINATION |
| | 18 | BY MR. ILLMER: |
| 09:37:17 | 19 | Q.  Good morning.  This is Rick Illmer.  I represent the |
| 09:37:21 | 20 | defendants.  Can you hear me okay, Mr. Hutchins? |
| 09:37:23 | 21 | A.  I can, yes. |
| 09:37:23 | 22 | Q.  All right.  So I'm going to take your deposition this |
| 09:37:27 | 23 | morning.  You understand that the interests of my |
| 09:37:30 | 24 | clients are adverse to those of the plaintiff? |
| 09:37:34 | 25 | A.  That's my understanding. |

Robert A. Hutchins - November 19, 2018

11:13:38   1      negotiation, FRG would rather have a more limited use

11:13:42   2      in order to get a lower rate, and it would just take

11:13:44   3      them one state a time as a group?

11:13:59   4           THE WITNESS:  The court reporter couldn't

11:13:59   5      understand your question.

11:13:59   6           MR. ADAMS:  I didn't either.

11:13:59   7           MR. ILLMER:  That's okay.  I'll try again.

11:13:59   8           THE WITNESS:  Sorry.  I think I did,

11:14:03   9      but...

11:14:03  10      BY MR. ILLMER:

11:14:04  11   Q.  Well, it's possible that FRG might not have desired

11:14:10  12      to negotiate a nationwide royalty at the time, right?

11:14:14  13   A.  That's a possibility, but, again, it's a two-party

11:14:16  14      negotiation.  And I specifically considered that in

11:14:20  15      my assessment of that issue.

11:14:25  16   Q.  The more limited the rights, the lower the royalty

11:14:28  17      would be?

11:14:28  18   A.  In general, yes.

11:14:29  19   Q.  The more limited the use, the lower the royalty would

11:14:33  20      be?

11:14:33  21   A.  Generally that's correct.

11:14:36  22   Q.  And so far, of what you know of the facts in this

11:14:46  23      case, FRG does not use the Firebirds name or mark in

11:14:51  24      advertising for Village Burger Bar?

11:14:52  25   A.  Well, I understand that all of the individual brands

Robert A. Hutchins - November 19, 2018

| | | |
|---|---|---|
| 11:15:02 | 1 | are directly promoted on FRG's website.  There are |
| 11:15:09 | 2 | direct links to the individual brands on FRG's |
| 11:15:12 | 3 | website, so -- and I understand the plaintiffs |
| 11:15:14 | 4 | consider that to be an infringing act, as well as I |
| 11:15:18 | 5 | understand, too, that the 5K run, all the individual |
| 11:15:22 | 6 | brands were promoted under the FRG umbrella, and I |
| 11:15:26 | 7 | understand the plaintiffs consider that also to be |
| 11:15:28 | 8 | infringing acts. |
| 11:15:29 | 9 | Q.  Okay. |
| 11:15:30 | 10 | MR. ILLMER:  I'll object to the |
| 11:15:32 | 11 | nonresponsiveness and move to strike.  But let's |
| 11:15:34 | 12 | take each of those. |
| 11:15:34 | 13 | BY MR. ILLMER: |
| 11:15:35 | 14 | Q.  So if -- under your hypothetical 2 percent royalty, |
| 11:15:38 | 15 | you didn't limit it to just FRG using it in the way |
| 11:15:42 | 16 | it's been used now, correct? |
| 11:15:43 | 17 | A.  Can you say that again? |
| 11:15:49 | 18 | Q.  Yeah.  Under your hypothetical where you came up with |
| 11:15:53 | 19 | the 2 percent reasonable royalty rate, the use was |
| 11:15:57 | 20 | not restricted to the same uses that FRG has made of |
| 11:16:01 | 21 | the mark, if any, in the past? |
| 11:16:03 | 22 | A.  This, again, that -- I don't.  This is an ex ante |
| 11:16:14 | 23 | analysis done prior to the infringement occurring, so |
| 11:16:16 | 24 | in this royalty analysis, they would have the freedom |
| 11:16:19 | 25 | to operate and the freedom to use the mark as they |

Robert A. Hutchins - November 19, 2018

| | | |
|---|---|---|
| 11:16:22 | 1 | saw fit.  So what actually happened isn't necessarily |
| 11:16:24 | 2 | relevant to the hypothetical negotiation. |
| 11:16:27 | 3 | Q.  Well, then why did you bring up what FRG has -- what |
| 11:16:31 | 4 | use it's made of the mark in the past? |
| 11:16:33 | 5 | A.  I was responding to your question about Village Bar |
| 11:16:39 | 6 | not using the mark. |
| 11:16:40 | 7 | Q.  Okay.  Well, let me try it a different way. |
| 11:16:42 | 8 | Your royalty rate assumes that FRG is going |
| 11:16:46 | 9 | to use the Firebird mark advertising for each brand |
| 11:16:50 | 10 | subsidiary, correct? |
| 11:16:55 | 11 | A.  It doesn't make that direct assumption.  It assumes |
| 11:16:57 | 12 | that FRG will take a license to the mark, and they |
| 11:17:00 | 13 | can use it as they see fit. |
| 11:17:01 | 14 | Q.  And that would include using it to advertise each of |
| 11:17:07 | 15 | the brand subsidiaries? |
| 11:17:08 | 16 | A.  It could. |
| 11:17:08 | 17 | Q.  So under your 2 percent royalty, FRG would have a lot |
| 11:17:17 | 18 | more broader use of the mark than what it has at |
| 11:17:20 | 19 | least done in the past, if anything? |
| 11:17:22 | 20 | A.  They could, yes.  They would have the freedom to |
| 11:17:29 | 21 | operate and freedom to use the mark as they saw fit |
| 11:17:32 | 22 | for their best purposes. |
| 11:17:34 | 23 | Q.  If F -- if FR -- if the use was to be limited to the |
| 11:17:37 | 24 | same uses that FRG made of the mark in the past, how |
| 11:17:42 | 25 | much lower would the royalty rate need to be? |

Robert A. Hutchins - November 19, 2018

| | | |
|---|---|---|
| 11:17:44 | 1 | A.  Again, that's a factor I took into consideration, as |
| 11:17:48 | 2 | discussed in my opening report.  And I -- it did |
| 11:17:52 | 3 | result in a lower royalty rate, a reduction to the |
| 11:17:55 | 4 | rate itself.  So it's something I considered and |
| 11:18:00 | 5 | deducted or took into account in my royalty rate |
| 11:18:02 | 6 | analysis. |
| 11:18:02 | 7 | MR. ILLMER:  I'm going to object as |
| 11:18:04 | 8 | nonresponsive because I don't think you answered my |
| 11:18:07 | 9 | question.  And, again, not meant to be |
| 11:18:09 | 10 | disrespectful in any way. |
| 11:18:11 | 11 | BY MR. ILLMER: |
| 11:18:11 | 12 | Q.  If the hypothetical royalty that you're opining about |
| 11:18:14 | 13 | had a use that was limited -- not as broad as what |
| 11:18:19 | 14 | you assumed, but limited to the same use that FRG had |
| 11:18:23 | 15 | made of this mark in the past, how much less would |
| 11:18:27 | 16 | the royalty need to be for it to be reasonable? |
| 11:18:31 | 17 | A.  Again, I took that into account in my analysis and |
| 11:18:34 | 18 | the -- and I already made that adjustment. |
| 11:18:36 | 19 | Q.  But you already told me the 2 percent royalty would |
| 11:18:42 | 20 | allow FRG to use the mark as it sees fit all across |
| 11:18:47 | 21 | the country, right? |
| 11:18:48 | 22 | A.  That's correct. |
| 11:18:48 | 23 | Q.  So if FRG's use under this royalty were to be more |
| 11:18:55 | 24 | limited only in Texas and Oklahoma and only for the |
| 11:18:58 | 25 | same things it's done in the past, if anything, how |

Robert A. Hutchins - November 19, 2018

| | | |
|---|---|---|
| 11:19:00 | 1 | much less than 2 percent would it be? |
| 11:19:01 | 2 | A. It wouldn't be any less, as I discussed in my report. |
| 11:19:04 | 3 | Q. So the royalty to use the mark for all time all |
| 11:19:09 | 4 | across the country would be the same as to use it |
| 11:19:12 | 5 | only in Texas on the FRG website and for the 5K run? |
| 11:19:19 | 6 | A. Yes.  Again, because that -- I took that specific |
| 11:19:23 | 7 | issue into account in settling upon my royalty rate, |
| 11:19:26 | 8 | so it's already -- |
| 11:19:26 | 9 | Q. How did you -- |
| 11:19:27 | 10 | A. -- factored in. |
| 11:19:27 | 11 | Q. How did you take it into account? |
| 11:19:29 | 12 | A. Well, it's described in detail in my report, but in |
| 11:19:34 | 13 | general, it was one of the bases for my opinion that |
| 11:19:37 | 14 | the royalty rate negotiations would start at the |
| 11:19:42 | 15 | bottom of the range of rates that I had identified as |
| 11:19:44 | 16 | comparable. |
| 11:19:45 | 17 | Q. And taking all that into consideration, you came up |
| 11:19:56 | 18 | with a rate that was 2 percent to use the mark as FRG |
| 11:20:02 | 19 | sees fit all across the nation, right? |
| 11:20:05 | 20 | A. Yes. |
| 11:20:05 | 21 | Q. All right.  And I'm saying if we take that use and |
| 11:20:11 | 22 | restrict it further, if we say FRG cannot use it all |
| 11:20:15 | 23 | across the nation, it can only use it in Oklahoma and |
| 11:20:17 | 24 | Texas, how much less would the -- than 2 percent |
| 11:20:19 | 25 | would it be? |

Robert A. Hutchins - November 19, 2018

| | | |
|---|---|---|
| 11:20:20 | 1 | A. It would still be 2 percent. |
| 11:20:25 | 2 | Q. Why would it be the same rate for a more limited use? |
| 11:20:28 | 3 | A. Well, again, because that 2 percent already takes |
| 11:20:35 | 4 | that into account. |
| 11:20:35 | 5 | Q. Any other reason? |
| 11:20:41 | 6 | A. Well, it's discussed -- the reasons -- how I settled |
| 11:20:47 | 7 | upon my rate are discussed in detail in my report, |
| 11:20:50 | 8 | and that's one of the issues that I -- that I |
| 11:20:52 | 9 | considered and evaluated, as long -- along with the |
| 11:20:57 | 10 | non-infringing alternatives. |
| 11:20:59 | 11 | Q. I want to make certain I understand your testimony. |
| 11:21:02 | 12 | A royalty for a more limited use is not worth as much |
| 11:21:05 | 13 | as a royalty for a broader use, correct? |
| 11:21:08 | 14 | A. Generally that's correct. |
| 11:21:09 | 15 | Q. And when you did your analysis in this case, after |
| 11:21:14 | 16 | taking into account all of the factors that you |
| 11:21:18 | 17 | considered, you came up with a 2 percent royalty to |
| 11:21:22 | 18 | use the mark across the whole country? |
| 11:21:24 | 19 | A. Correct.  That would be the -- one of the terms of |
| 11:21:29 | 20 | the license. |
| 11:21:29 | 21 | Q. All right.  So if the mark had a more limited use, if |
| 11:21:36 | 22 | it could not be used across the whole country, the |
| 11:21:38 | 23 | royalty would generally be less, correct? |
| 11:21:43 | 24 | A. Generally that's correct.  But, again, that's what I |
| 11:21:45 | 25 | took into account in settling on the bottom of the |

Robert A. Hutchins - November 19, 2018

| | | |
|---|---|---|
| 11:21:48 | 1 | lower rate in my range as a starting point for |
| 11:21:51 | 2 | negotiations.  So the premise -- |
| 11:21:53 | 3 | Q. But even after you took all of that into account, you |
| 11:21:57 | 4 | came up with an opinion that to use it across the |
| 11:22:00 | 5 | whole country, 2 percent would be the right rate, |
| 11:22:00 | 6 | correct? |
| 11:22:03 | 7 | A. Yes. |
| 11:22:03 | 8 | Q. And I'm saying if you now take your analysis and |
| 11:22:08 | 9 | reduce it further to say they're not going to be able |
| 11:22:10 | 10 | to use it across the whole country, it would then be |
| 11:22:13 | 11 | less than 2 percent, right? |
| 11:22:15 | 12 | A. I would -- I would disagree. |
| 11:22:16 | 13 | Q. Why? |
| 11:22:20 | 14 | A. Well, again, it's discussed in detail in my report, |
| 11:22:24 | 15 | but that factor, that issue has been taken into |
| 11:22:27 | 16 | account as part of the willing party negotiation |
| 11:22:30 | 17 | construct of the hypothetical negotiation.  So it's |
| 11:22:34 | 18 | not just one party's, you know, views as to what the |
| 11:22:37 | 19 | appropriate territory should be.  You have to |
| 11:22:39 | 20 | consider both parties' perspectives. |
| 11:22:42 | 21 | Q. So is it your opinion that FRG simply wouldn't agree |
| 11:22:51 | 22 | to a lower amount for a lower or a more restricted |
| 11:22:55 | 23 | use? |
| 11:22:55 | 24 | A. That FRG would not agree to it? |
| 11:23:00 | 25 | Q. Pardon me.  That the plaintiff would not agree.  I |

Robert A. Hutchins - November 19, 2018

11:23:03  1         misspoke.

11:23:03  2   A.    I think the parties would ultimately conclude that

11:23:07  3         the best way going forward would to be -- have an

11:23:12  4         agreement that did not limit or have territory

11:23:14  5         restrictions in it.

11:23:15  6   Q.    And what is the factual basis for that conclusion?

11:23:20  7   A.    Again, it's discussed in my report, but in general,

11:23:26  8         it's so that the parties will not have to continue to

11:23:29  9         come back to the negotiating table every time either

11:23:34 10         party wanted to expand into a new state.  It also

11:23:37 11         allowed the plaintiff -- I'm sorry -- the defendant,

11:23:41 12         the licensee, the maximum freedom to operate.

11:23:45 13   Q.    Anything else?

11:23:46 14   A.    I would say, too, it prevents the -- prevents the --

11:23:53 15         what they call the hold-up issue, whereas if you have

11:23:55 16         to go back and negotiate a new rate every time you

11:23:58 17         enter a state, to the extent that the licensee is

11:24:02 18         expanding and growing, that creates a potential for

11:24:05 19         the licensor to try and extract a higher royalty rate

11:24:09 20         from them because they know they need that license in

11:24:11 21         order to -- in order to not be infringing the mark

11:24:15 22         under the hypothetical negotiation construct.

11:24:17 23   Q.    Anything else?

11:24:18 24   A.    I think that's probably generally -- generally the

11:24:23 25         main reasons or main bases.