IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FIREBIRDS INTERNATIONAL, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-02719-B |
| | § | |
| FIREBIRD RESTAURANT GROUP, LLC, FIREBIRD IP LLC, and MICHAEL D. KARNS | § | |
| | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE THE REPORT AND OPINIONS OF ROBERT HUTCHINS**

**I.     MR. HUTCHINS' OPINIONS ARE BASED ON INCORRECT LAW.**

1.     Mr. Hutchins' opinions depend upon his assumption that Defendants and the Brand Restaurants—which are separate legal entities—operate as a single economic entity so that the sales of Defendants' subsidiaries, the Brand Restaurants, can be used to determine the amount of Defendants' profits from which damages should be calculated. (App.[1] 011 at 16:2-16; App. 017 at 40:4-10.)  Under Texas law, however, the "limitation on liability afforded by the corporate structure can be ignored only 'when the corporate form has been used as part a basically unfair device to achieve an inequitable result.'" *SSP Partners v. Gladstron Investments (USA) Corp.*, 275 S.W.3d 444, 451 (5th Cir. 2008).  There is no such claim in this case. Mr. Hutchins' opinions are therefore based on an erroneous legal premise. "[W]here as here, the expert's opinion is based on an erroneous legal premise, it is appropriate to exclude such

---

[1] "App." refers to the appendix in support of Defendants' motion and "Pl. App" refers to the appendix in support of Plaintiff's Opposition.

testimony." *Southard v. United Reg'l Health Care Sys. Inc.*, No. 7-06-CV-11-L, 2008 WL 4489692, at *2 (N.D. Tex. Aug. 5, 2008).

2. Although Mr. Hutchins opined that it was proper to include the sales of the Brand Restaurants as Defendants' profits because they operate as a "single economic entity," Plaintiff now concedes that the "single business entity" doctrine does not apply here. (Pl. Br., 3.) Instead, Plaintiff argues, **for the first time**, that it relies on an alter ego theory of liability. (*Id*.) Plaintiff, however, did not plead any alter ego in its complaint.

3. "Texas law requires that a plaintiff suing under an alter ego theory must separately plead each basis for disregarding the corporate fiction." *VBFSB Holding Corp. v. Fid. & Deposit Co. of Maryland*, No. CA3:95-CV-00693-BC, 1997 WL 527308, at *11 (N.D. Tex. Aug. 19, 1997) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 275 n.5 (Tex. 1986)). Neither the words "alter ego" nor "fraud" appear in Plaintiff's First Amended Complaint. (Pl. Am. Complaint, ECF No. 38.) Moreover, Plaintiff expressly represented to this Court that it was **not** pursuing an alter ego theory in this case. (Pl. Reply Br. in support of First Mtn to Compel, ECF No. 41 at 7-8 ("Firebirds cites to both the alter ego doctrine and the single business enterprise doctrine as guideposts for addressing this discovery dispute. **But Firebirds is not seeking to hold the Restaurant Subsidiaries liable for acts of Defendant FRG or vice versa under these theories**.") (emphasis added).

## II. MR. HUTCHINS' ROYALTY OPINIONS SHOULD INDEPENDENTLY BE EXCLUDED.

### A. Mr. Hutchins' Conducted His Royalty Analysis Under the Wrong Date of Negotiation.

4. When an expert conducts his analysis using the wrong date of hypothetical negotiation, the expert's opinion is unreliable and should be excluded. *Cassidian Commc'n Inc.*

*v. Microdata GIS Inc.*, No. 2:12-CV-00162-JRG, 2013 WL 11322510, at *2 (E.D. Tex. Dec. 3, 2013). Plaintiff's argument that the jury should determine the date of the hypothetical negotiation is based on a mischaracterization of undisputed facts.

5. In 2013, Defendants sought to enter the Business-to-Business ("B2B") market and offer restaurant management services for others. Defendants filed a trademark application to use "Firebird Restaurant Group" in the B2B space. That application is still pending, and Defendants have not offered for sale any services under that mark. **From 2008 to the present**, however, FRG has acted as a restaurant ownership company and has offered management services only to the restaurants it owns, each of which operates under its own trademarks. **From 2008**, Defendants used the "Firebird" name on letterhead, in e-mail, and on business cards. (Pl. App. 074 at 56:4-21.) Defendants' "Firebird" name also appeared in publicly available articles, such as those in the Dallas Morning News. (App. 044.) This is exactly the conduct that Plaintiff alleges infringes its trademarks. (*See e.g.*, Pl. Br. Par. Summ. J. 6 (arguing Defendants' infringe Plaintiff's trademarks by placing "Firebird Restaurant Group" on "restaurants' menus, flyers, print advertisements, websites, promotional items, **press releases**, event and charity sponsorships, signs, t-shirts, and social media, as well as **business cards, letterhead, and return address labels** . . .") (emphasis added)), and it began in 2008.

6. The conduct Plaintiff alleges infringes its trademarks began in 2008. Yet, Mr. Hutchins conducted his reasonable royalty analysis using a 2013 hypothetical negotiation date.[2] "While the Court recognizes that its role as gatekeeper under *Daubert* 'is not intended to serve as a replacement for the adversary system,' here [the expert] has employed a

---

[2] Analyzing the *Georgia-Pacific* factors using the correct hypothetical date of negotiation has severe consequences for this litigation because the parties would have been in significantly different bargaining positions in 2008 than in 2013. In 2008, FRG owned only one Brand Restaurant. (App. 4 at 60:3-17; App. 5 at 61:5-62:6.)

fundamentally flawed methodology in calculating reasonable royalty, such that the flaw cannot be cured by "[v]igorous cross-examination, presentation of contrary evidence, [or] careful instruction on the burden of proof.'" *Cassidian Commc'ns*, 2013 WL 11322510, at *2 (citations omitted). Mr. Hutchins' reasonable royalty opinion should therefore be excluded.

### B. Mr. Hutchins' Royalty Analysis Is Disconnected From the Facts of this Case.

7. To be admissible, expert testimony opining on a reasonable royalty must "sufficiently [tie the expert testimony on damages] to the facts of the case. If the [trademark owner] fails to tie the theory to the facts of the case, the testimony must be excluded." *Exmark Mfg. Co. v. Briggs & Stratton*, 879 F.3d 1332, 1349 (Fed. Cir. 2018). Defendants' motion identifies two ways in which Mr. Hutchins' royalty opinion fails to tie his theory to the facts of this case. First, although Defendants do not operate any stores outside Texas and Oklahoma, Mr. Hutchins' royalty analysis provides Defendants with nationwide rights. (App. 24 at 66:3-7.) In its Opposition, Plaintiff again confuses FRG's ownership of the Brand Restaurants (limited to Texas and Oklahoma) with FRG's B2B efforts. FRG's 2013 request for nationwide trademark rights was for B2B services, not the services currently provided. Thus, Mr. Hutchins' royalty analysis should have used a royalty percentage applicable to a different business model (B2B) or for a much more limited geographic scope (Texas and Oklahoma only). Because he did neither, Mr. Hutchins' opinion is disconnected from the facts of this case, and therefore inadmissible.

8. Second, Mr. Klein did not restrict his royalty analysis to the same uses FRG has made of the mark in the past, and his opinion therefore must be excluded. (App. 023 at 61:14-62:22.) Although Plaintiff claims "Defendants have used the FIREBIRD mark on restaurant menus on its restaurant websites," the truth is that "a Firebird Restaurant Group concept"

appeared on the menu of only **one** Brand Restaurant from 2013-2017 and has not appeared on the websites for several Brand Restaurants.

                                                Respectfully submitted,

                                                By: */s/ Richard A. Illmer*_____
                                                    Richard A. Illmer
                                                    Texas Bar No. 24007574
                                                  Rick.Illmer@huchblackwell.com

                                            **HUSCH BLACKWELL, LLP**
                                            1900 N. Pearl Street, Suite 1800
                                            Dallas, Texas  75201
                                            (214) 999-6100
                                            (214) 999-6170 (*facsimile*)

                                            Dustin L. Taylor
                                            Texas Bar No. 24088510
                                            Dustin.Taylor@huschblackwell.com
                                            **HUSCH BLACKWELL, LLP**
                                            120 South Riverside Plaza, Suite 2200
                                            Chicago, Illinois  60606-3912
                                            (312) 526-1517
                                            (312) 655-1501 *(facsimile)*

                                            **ATTORNEYS FOR DEFENDANTS**
                                            **FIREBIRD RESTAURANT GROUP LLC,**
                                            **FIREBIRD IP LLC, and MICHAEL D. KARNS**

## CERTIFICATE OF SERVICE

      I hereby certify that on this 10th day of January, 2019, I served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) via Electronic Service through the Northern District of Texas Electronic Case Filing System (ECF) as follows:

| | |
|---|---|
| Shannon Zmud Teicher | W. Thad Adams, III |
| Brian H. Oates | Christina Davidson Trimmer |
| Jackson Walker LLP | Samuel A. Long, Jr. |
| 2323 Ross Avenue, Suite 600 | Shumaker, Loop & Kendrick, LLP |
| Dallas, Texas 75201 | 101 South Tryon St., Suite 2200 |
| steicher@jw.com | Charlotte, North Carolina 28280-0002 |
| boates@jw.com | tadams@slk-law.com |
| | ctrimmer@slk-law.com |
| | along@slk-law.com |

      */s/ Richard A. Illmer*
      Richard A. Illmer